## TRUE *v.* BRYANT & a.

A party who agrees to do certain work upon materials to be furnished by another, is not responsible for defects in the articles made, arising out of the unfitness of the materials furnished him.

Entries made by a person in pencil, in his own books of account, are admissible in evidence, if not otherwise objectionable.

ASSUMPSIT upon an account annexed to the writ. Plea, the general issue, with a set-off. The items of the account annexed to the writ were for ladders and ladder-rounds, which, it appeared in evidence on the trial, were furnished by the plaintiff to the defendants, under a contract in writing of which the following is a copy:

True *v.* Bryant.

"Articles of an agreement made this 19th day of November, A. D. 1850, between John Bryant and Company, of the first part, and D. E. True, of the second part, as follows, viz.:

"We, John Bryant and Company, of the first part, do agree to pay to D. E. True, of the second part, three $\frac{5}{100}$ cents per foot for making portable ladders, and one $\frac{5}{100}$ cents for making common ladders, as follows, viz.: to plane and bore the sides, and to make and box up the rounds for the same; and one half cent per superficial foot for making packing boxes for the same, as follows: to saw the top, bottom, sides and ends to their proper size, and pack them into bundles for transportation, top and one end planed to each box. Furthermore we agree to have the lumber for the above articles sawed to a suitable size and delivered to the shop, now occupied by D. E. True, seasoned and fit for use, as soon as circumstances will admit; likewise to furnish the shop, water power, tools and machinery, now occupied by said D. E. True, for manufacturing the articles above named; also to be at the expense of making a new grooving machine and an upright boring machine, for boring the common ladders; also to alter the turning machine, so as to turn different sized sides for the portable ladders. We also agree to furnish stock for two thousand portable ladders, to average from eight to fourteen feet each, and two thousand common ladders, to average from twelve to thirty feet. D. E. True, of the second part, agrees to do the above work in as good and workmanlike manner as those heretofore done by him.

(Signed)        JOHN BRYANT & Co.,

DANIEL E. TRUE."

The plaintiff offered in evidence his books of account, supported by his suppletory oath. The book of original entries was a small memorandum book, ruled in the usual form of a common day-book. All the entries upon it were made in pencil, there being no writing with ink in any part of the book. The defendants objected to the admission of this book as evidence, but the court overruled the objection.

Evidence was introduced by the defendants, tending to show

that the ladders and ladder-rounds specified in the account, and delivered to them, were not made according to the contract, in the following particulars, to wit : that the sides of the ladders were not planed or turned smoothly ; that the holes for the rounds, and the grooves in the sides of the portable ladders, were not cut out smooth, by reason of which the rounds would not shut readily into the grooves in folding the ladders, and when shut the rounds would bind in the grooves, so as to render it difficult to open them ; that the rounds were of too small size, and on that account liable to break, and that, by reason of these defects in the workmanship, the ladders were less saleable than they would have been if made according to the contract.

On the part of the plaintiff evidence was then introduced, tending to show that the want of smoothness in the sides of the ladders was owing to the timber of which they were made being cross-grained, and but partially seasoned ; that the difficulty in opening and shutting the portable ladders was occasioned by the shrinking of the timber after the grooves were cut, it not being properly seasoned when furnished by the defendants ; that the breaking of the rounds was owing to the want of a proper degree of toughness in the timber, and that when made they were of the proper size, and if they were too small it was owing to their being made of this unseasoned timber, and shrinking after they were made. It was in evidence that some of the timber was sawed out by the defendants in a saw-mill near the shop occupied by the plaintiff, and stuck up in piles in the yard of the mill, which was in fact the same as the yard of said shop.

The counsel for the defendants requested the court to instruct the jury that " the plaintiff was to judge of the fitness of the timber, and if in his opinion it was unsuitable, he should have notified the defendants, instead of working up timber which he knew was unsuitable ; and further, that the plaintiff was not to presume that the defendants intended that he should use the timber until it was seasoned, although it was brought to the shop and laid by the defendants in a convenient place to be taken and used by the plaintiff ;" but the court declined so to instruct the

jury, but did instruct them that the defendants, by the contract, were bound to furnish and deliver at the shop timber properly seasoned, and fit for purposes specified in the contract; that when timber was so delivered by the defendants, the plaintiff was not required to judge, at his peril, whether it was suitable for those purposes or not, but was to proceed and work up the timber into ladders and ladder-rounds, in such manner as might best be done with timber of that quality, using ordinary discretion and skill in selecting and working the timber for the different articles to be made therefrom, and that if the defects complained of by the defendants were owing to the unseasoned condition of the timber when delivered by the defendants at the plaintiff's shop, or to any other quality of the timber, the plaintiff was not to be held liable for such defects.

The jury returned a verdict for the plaintiff, and the defendants having excepted to the foregoing instructions and rulings of the court, move that the same be set aside, and a new trial granted.

*Emerson*, for the defendants.

*J. Bell* and *Hutchinson*, for the plaintiff.

BELL, J. The question raised by this case relates to the construction of the contract between the parties. The defendant contends that the plaintiff was bound to judge, at his peril, of the fitness of the timber, and should not have used it if not suitable. But we think this is neither the natural nor reasonable construction of the agreement. The defendants agreed " to have the timber for the above articles sawed to a suitable size, and delivered at the shop occupied by the plaintiff, seasoned and fit for use, as soon as circumstances can admit." If, then, the defendants, in violation of their contract, delivered timber unseasoned and unsuitable for use, the fault was their own, and the plaintiff would be in no degree answerable for defects in the manufactured articles, arising from such defect of the materials,

provided he used proper skill and care in selecting the materials, and his work was properly done. His stipulation was " to do the above work in as good and workmanlike manner as those heretofore done by him."

The instructions then sought by the defendants were wrong, and therefore properly refused, while the charge of the court was correct in point of law, and expressed with caution and good judgment.

A further question relates to the entries in the plaintiff's books of account, which were all made with a lead pencil only. In the case of *Stone* v. *Sprague*, 4 Foster 310, it was said by the learned judge who delivered the opinion of the court, that it had been held in numerous instances, where the law in transactions of private business requires a written memorandum, or the signature of a party, that a writing in pencil is sufficient. The authorities there cited, and those cited by the plaintiff, 12 Penn. (2 Jones) 168; 13 Met. 537, entirely support this doctrine and the ruling of the court below in this case. There must, therefore, be

*Judgment on the verdict.*